Good morning, and I would like some rebuttal, please. And so, you know, I'm colorblind, I can't see the lights, so I just talk until you tell me to shut up and shut down. Good morning, my name is Greg Silvey, and I represent the appellant Krister Evertson. I'm also honored to have the first argument here in our new courtroom. Unfortunately, I think our audience is going to learn just how boring oral argument is when you haven't read the briefs. And then I'm going to add to it the fact that this is a rip-rip case, and I'm going to be talking about jury instructions, and so their eyes will soon be glazing over. But, to the bench and bar, this is absolutely fascinating stuff. Secord, of course, knows Chris had 10 tons of sodium metal there in Salmon, Idaho. And, I guess for our audience, sodium metal reacts violently if it gets wet. He ran out of money for his experiments, he went back to Alaska to make some more. Before he was able to come back, he didn't come back when he said, and then before he was able to get back, he got arrested on another charge. The EPA came in, spent $421,000 cleaning up his stuff, and then the rest, as we say, is history. Obviously, the issue in this case are the jury instructions. I have extensively briefed it, and what's so interesting here is the number of errors to the instructions. What's really interesting to us, though, is that, as far as I can tell, no objection was made in the trial court to the instructions. I found that interesting as well. I would guess so, because it means we were viewed for plain error, which is an extraordinarily high hurdle to get over. But, Your Honor, I think we can get there today, because we'll start with, well, let's start with the waste. Whether or not the defendant needed to know it was waste. Under this court's law, the defendant has to knowingly modify both hazardous and waste. In this case, as I've briefed, there was no element that the jury had to find that Mr. Everton knew that the material was waste. Under this court's law, we start with error, but it's plain. It is not consistent with the case law of the court. So we have that. We also have the court, while there's no objection, the court misinstructs orally when he changes, when the judge basically takes out a comment or a before. Well, there was an omission of a word, but wasn't that taken care of by the written instructions that were submitted to the jury? Well, ordinarily, I could see the court taking that view. But here, we just have this vast quantity of problems. And what the government did in this brief is it goes through the various errors, and it picks them apart, and this is why this isn't a problem, this is why this isn't a problem. Oh, the jury had the written instructions so-and-so. When the court was correct, when we did have an objection to the closing argument, and the court instructs that discarded or that ministerial can be discarded or abandoned versus abandoned means discarded, the government says that's error splitting, et cetera, et cetera. Well, I'm viewing this as almost a cumulative error sort of thing. We actually have errors. It's discard or plain error. What suggests there was any prejudice from what you're identifying as a misstatement by the district court? The prejudice, well, the practical effect of the misstatement is everything in the world becomes hazardous waste, because it's anything that's being disposed of, being stored, or being stored in lieu of being disposed of. Anything that you can think of is one of those things. So instead of waste being something which is being disposed of or being stored in lieu of being disposed of, all of a sudden you add to it just being stored. So, again, it just takes two prongs of how something can become waste. Your side conceded in the final argument that we're dealing with hazardous materials. Yes, yes. There's no question sodium metal is a hazardous material. I noticed, and I'll apologize for the briefing, I'm a little light in chemistry, but when I was preparing for this argument, the sodium hydroxide, the NaOH, I think there was a failure of proof on whether it was actually hazardous, because for a corrosive material it has to be an aqueous. Does that make any difference at this point, if you conceded in an argument? Being hazardous material is different from being hazardous waste. Yes, but I mean hazardous. It was conceded. I read the final argument. I usually read that first to see what your case was all about. You conceded it was hazardous. Your side did. Of sodium hydroxide or sodium metal. What about the stuff in the tanks? Wasn't that waste? No, no, no. The stuff in the tanks, in the one tank there was a process. The theory was, in the one tank, this is the mixture, all this, and this can still be reheated and reused. In the other tank, the sodium hydroxide, I don't believe that our side ever conceded that anything was waste, because that's the very issue, because he didn't have a permit. Materials are hazardous, so that would be confessing judgment. If I could interrupt you just a minute. I read the instructions you offered. I read what it was you wanted the judge to give. Then I read what the judge gave. Then I read U.S. v. Hoffman and the instructions they gave there. And in that particular case, we decided that they were fine instructions. Your instructions were no different than those, and the judge gave not much different than those. So where's the error? I'll have to, when I sit down, I'll go and look at Hoffman again. I mean, when you read Hoffman, it really says, the court has to say something about knowingly store or dispose of. As to the hazardous waste, the court gave the statute, and then the court said that the jury needed to find that the government approved the elements of waste. That's the instructions this court gave. If I compared those to Hoffman, they were much the same. If I compared them to your instructions on waste, which I thought would have been different than what the court would have done, I didn't see any difference. So the very ones you offered are now the ones you're challenging? Well, hence the point in our review. Again, I was not the trial attorney. I did not offer those instructions. But they were offered. Yes, they were offered. And actually, though, the court's instruction varied from its own pre-proof instruction and the government's proposed instruction and the defense proposed instruction. Well, Frank, just a minute, counsel. The court gave the pre-proof. The court gave the after and the post-proof instructions. You didn't reject the pre-proof instructions. And I guess it's a matter of on plain error whether this plainly differs from the pre-proof, isn't it?  And Appellant's argument now is because under this court's law, knowingly applies to both hazardous and waste, the court's pre-proof instruction included in it that the defendant knew the materials were waste and that they had the potential to be harmful, et cetera, et cetera. That was the government's proposed instruction, the defense proposed instruction, the court's pre-proof instruction. By the time we get to the post-proof instructions, for reasons that do not appear in our record, the requirement that the defendant know that the materials are waste disappears. So, hence the point here. But the court did give instruction that the defendant had to have violated the instruction or the hazardous materials regulation. The defendant had to have knowledge of the facts giving rise to the violation and the defendant had to have knowledge that his conduct was unlawful. That's in the court's post-proof instruction. And when I review Hoffman and I review what you suggested he ought to give, I couldn't find much difference. And again, without Hoffman in front of me, since it's laying on my table, my memory is, because in responding to the government's similar arguments of these various cases of Appell, similar jury instructions, my memory is that those instructions didn't actually, or they actually had in the element that something is waste. Because waste is the linchpin of all this. We can have hazardous materials all we want. What we can't do is have hazardous waste without certain conditions or permits. Well, you aren't really arguing that this is a Ratzlaff case, are you? I'm sorry, I'm not familiar. Well, Ratzlaff would suggest that the restructuring of financial transactions is so complex that one has to suggest that one is ignorant of specific regulations in a particular situation. You're not really arguing this is a Ratzlaff case, are you? Not to the riprap. I am to the transportation of hazardous materials, which was count one, because that's where they are arguing over the cheap construction and whatnot. Now then, how do you get around U.S. versus international minerals and chemical? Which is, yes, I'm familiar with that case. Which is a 1971 Supreme Court case. That says very straight, where dangerous or delirious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation. That's the Supreme Court talking. Yes, and again, I guess now we're into count one. Well, that's where you went immediately, saying you wanted to talk about count one, so I hit directly there. Yes, I guess what we have is, again, we have the statute. We have the statute that was amended after this offense that basically is defining willfulness. And so under the, let's see, it is our position, because there's basically one case that came out interpreting this. It's, I think, Moskowitz, and there it's a Second Circuit case. But it does hold that you have to know what the specific regulation is, then, in order to violate it. And the indictment specifically said that Mr. Ebertson had specific knowledge of the regulation he's violating. So we have a constructive amendment, which incidentally was objected to right before trial in a written objection, which I had neglected to put in my excerpts. Well, but Pang is pretty straight on that. Says we don't surplus mens rea allegations need not be proven. Right. So we go back to the It becomes a variance without prejudice. It's not a constructive amendment. And again, the prejudice is, I mean, he believed that he defended the charges as he was charged. And interestingly enough, in this specific case, he was acquitted of a similar charge in Alaska. So for the however many months of pretrial preparation, he believes that the government needs to prove that he knows these regulations. And there's no evidence that he does. His interview with the FBI is he's not comfortable. He's not familiar with these things. And then in this case, I mean, we have a fairly extreme example of having your buddy, you know, toast up a quarter mile down the road in salmon becomes a violation of the statute. And you go to federal prison. And when you're moving barrels in the same condition that they came from China. So the prejudice is, again, his approach to the defense of this case was believing that the government had to prove knowledge and then basically a trial. Now they don't need to prove knowledge. Why wasn't it waste? The material. So we go back to counts two and three. The materials were not waste because he had no one to be waste. They needed they need to be disposed of or have an intent to dispose of them, which is to discharge them into the environment. Why is the evidence just overwhelming that that's exactly what happened? Because he didn't want he wanted his stuff worth a lot of money. He went broke doing this. He went off to earn more money. The process didn't work. He went broke. He theoretically, given the benefit of the doubt, stored the stuff for a year, traded some stuff for the storage. Then he disappeared, left them there for another year. Didn't pay anything. Nobody could get in touch with him. Why isn't that substantial evidence, overwhelming evidence that he abandoned them, walked away from the whole project that was no longer economically feasible? Because this is that he had worked on this for five years. If he was going to walk away from it. He did walk away. If he was going to walk away with it in the way the court suggested, walk away and not come back. I mean, he went to Alaska. We know that. If he was going to walk away and never come back and leave this, he would have left it in the Tanner building in the first place. He wouldn't have pestered his buddy to take it to his storage yard. Well, but isn't that just an argument, really, about your idea of the evidence? I mean, if we're really going to, is there sufficient evidence in here to be convicted, we have to take the facts as they are and as they're plated, or as they're presented to the jury, and you may have other facts that may not be the same. But the bottom line is, my colleague is absolutely correct. He told people he ran out of capital. He told, he arranged to have them stored. He says the process doesn't work. He paid for a year's storage and then didn't ever come back and couldn't be contacted and wouldn't be contacted and wouldn't pay for the storage. He didn't make any arrangements for after the year. How do I suggest that given the benefit of the doubt to the jury now, and the government, in effect, that there's no evidence to sustain this verdict? This is where we go back to the jury instructions. There are so many errors through the jury instructions. When the jury needs to decide, is it waste, which means, so waste is material which has been discarded, which means abandoned, which means being disposed of or being stored in lieu of being disposed of. And that's the argument that was made in the final business, that he was intending to come back. He never discarded this stuff, and the jury heard that and just didn't believe it. But the jury heard it through the prism of half a dozen jury instruction errors. I mean, we know what the jury instruction should have said. We know what the law is. You know, Hoffman, we know these things. The jury did not know this. I mean, we just have, again, You see, there's four parts, though, to plain error. You know, error, plain error, affected substantial rights, and then whether in the circumstances of the entire case, we ought to recognize it. And here, it just seems overwhelming to me, based on the evidence and what the jury heard, that it was abandoned. So even if we assume the first three prongs, why should we go with the fourth prong and recognize this error and overturn the conviction? Again, because, well, the You see, this is the problem with not making any objections to instructions in a case. I mean, you've got, the mountain that you have to climb makes the mountain that Sisyphus was climbing look easy. It's not a do-over system. And no doubt this will come up in a 2255. And I guess I'm trying to save the court a 2255 appeal. But back to, yes, everything should have been objected to. But again, where I started is where I'll end. We actually have errors, I think. So you're telling us the next round will be Strickland? Yes. Ineffective assistance of counsel. Ineffective assistance of, so, for instance. We'll confront that, given when we get to it, based on an evidentiary hearing, to find out what counsel would say in counsel's defense. So I believe I'm in negative time. Thank you, you are. I was just giving you a chance to answer Judge Trott's questions. Thank you very much. Good morning, your honors. May it please the court. John Smeltzer for the United States. Your honors, the evidence is and was more than sufficient to show that the defendant knowingly abandoned literally tons of reactive and caustic hazardous materials at the steel and ranch in Salmon, and thereby caused the illegal storage of hazardous waste under RCRA. Do you think the instructions were bulletproof? There was no, we submit there wasn't error in this one. There wasn't plain error. Bulletproof, I'm not sure how that falls on the scale. You say no error in the instructions. There, as we say in the brief, your honor, there are any number of ways you could formulate a RCRA instruction. There are ways that we propose to the court that were different than what the district court actually proposed. We preferred ours, but that doesn't mean the district court's instructions were error. They were adequate, and they certainly weren't plain error under this court's plain error, or under any plain error review. As the court noted, as Judge Smith noted, they're very similar to the instructions in Hoffman. There was the subsequent case in Hoyer which clarified what Hoffman meant in terms of needing to show knowledge of hazardous waste, but the Hoyer court did not in any way undermine the instructions in Hoffman or say that those instructions were wrong. The model instructions in O'Malley federal practice are very similar to what was given here. Ultimately, we think the instruction as to needing to prove waste and needing to prove knowledge of waste were adequate and were sufficient to put the jury on notice that they needed to find those elements. If you look at the case in its totality, we submit that given the nature of the case, the nature of the issues that were involved, and the way the parties argued the case, it was all about abandonment, as the court has noted. Did the defendant walk away from these drums, and wrapped up in that is obviously an intent to discard knowledge of the waste, and that action makes the material waste pursuant to RCRA, and it was all wrapped together. Those issues in the notion of abandonment, and of course the court instructed the jury that they needed to find that the defendant knowingly disposed or stored hazardous waste, and told the jury the waste is abandoned or discarded material. So the issue of abandonment was before the jury. It was argued that way, and it seems clear to us that the jury reached that issue. And as Your Honor noted just right, the evidence on abandonment was essentially overwhelming. Mr. Schmeltzer, the abandonment applied to which of the three counts? Counts two and three, the RCRA counts. Initially count two was charged on two theories. The materials that are in the process tanks, the sludge, the amalgam, and the caustic materials, were materials that the defendant was working on and trying to make into sodium borohydrate. We submitted the point that he moved those out of the Tanner building. He had already spent a year working on them. He had already run out of money. It was infeasible for him ever to start again. So at that point, he knows that he's not going to be able to make sodium borohydrate out of those materials, and those materials are waste from that point forward. But even if you give him the benefit of the doubt on that, at the point that the rental period at the Steele and Ranch runs out, of course, he doesn't come back. He doesn't call. He doesn't check in. He doesn't do anything. And at that point, it's as though he had just abandoned them all in the Tanner building. They're just materials that he has no right to have there. He hasn't made any arrangements for them. The evidence shows that he can't do anything with them, and it's clear that he has simply walked away from them. There was a substantial order of restitution in this case, before I forget. Do you concede that that was improper? No, Your Honor. The basic argument that was raised is whether there's any authority to impose restitution, and we believe the district court had the authority to impose restitution as a condition of supervised release. But that's not what the district court did. If there was, well, the district court, if you look at the judgment, the district court specifically embeds the restitution into the supervised release order. So the district court did do that, but it does appear the district court also Thought that was statutory. Well, ordered an immediate payment of restitution, is what the judgment said. How can it really be a condition of supervised release when he ordered the payment immediately and he imprisoned him immediately? Well, we concede, Your Honor, that there's an issue there. But with respect to the supervised release condition, there is authority to order restitution as a condition of supervised release. And the arguments that... are based on his order. The only thing I can find in the order that might even be construed to be a condition of supervised release is the turnover of the permanent fund compensation from Alaska. I think that might have been even more immediate. Well, I thought it was pretty immediate, but I tried to put the best light forward. If you look at the supervised release condition, and I believe we cited the language in our brief, Your Honor, but under supervised release, the court, as I remember, built in the payment of a nominal amount during the supervised release period. Do you agree that this could only have been done as a condition of supervised release? Yes, Your Honor. And it isn't clear that that's what happened. Is there any reason why we shouldn't send it back for clarification? No, Your Honor. Unless there are any other questions on the... Thank you. Thank you. Okay. I know you wanted to save some time, but we probably took it all, so I guess we're finished. Thank you very much. You want to give him a minute? Well, I thought we would come down and shake your hands. Thank you very much. Move over here. So he went there? I'm sorry. It's not set. You can all be seated. We decided we wanted to do that because it's the Idaho thing to do. We watched the Supreme Court do it, and they seemed pretty anxious to do it, and we thought that was pretty nice. And we're in Idaho and in Coeur d'Alene, so we were with the Chief Justice and the Chief Justice of the Idaho Supreme Court, and they were talking to us about the good things they do. We decided we'd adopt some. To suggest the Ninth Circuit is not worthy of adopting good things from Idaho now cannot be said. So, case 07-30427, United States of America v. Everson, is submitted.
judges: Thompson, Trott, Nr Smith, Cjj